ESTES, *Plaintiff in Error,* v. LONG.

1. **Execution Returnable at wrong Day, not Void.** An execution issued out of a court of record and by mistake of the clerk made returnable before the time fixed by law, is not for that reason void, but continues in force until the time when by law it is returnable, and a levy may be made at any day before that time.

2. **Ejectment:** EVIDENCE: PRACTICE. A defendant in ejectment will not be precluded from availing himself of evidence offered by the plaintiff tending to show title in the defendant, by reason of the

fact that his answer sets up another and different title. Much more if the answer is a general denial, may he avail himself of such evidence.

3. **Possession, how Changed from Friendly to Adverse.** If one buys land with borrowed money, taking the title in the name of the lender, and goes into possession under an agreement with the lender that the title is to be conveyed to him whenever he repays the loan, his possession will not become adverse as against the lender until he has made an open and explicit disavowal of the lender's title and assertion of title in himself, and such disavowal and assertion have been brought home to the lender.

*Error to DeKalb Circuit Court.*—HON. JOSEPH P. GRUBB, Judge.

AFFIRMED.

*S. G. Loring* for plaintiff in error.

*Shanklin, Low & McDougal* for defendant in error.

HENRY, J.—Plaintiff sued in ejectment for the following tracts of land: Southeast quarter of southeast quarter of section 4, township 59, range 30; west half of northeast quarter of section 9, township 59, range 30; and east half of northwest quarter of southeast quarter of southeast quarter of section 9, township 59, range 30. Fountain Hargis and the executors of William Hargis, defendant's grantors, were formal parties. The several answers denied the allegations of the petition and pleaded title in defendant Long and the statute of limitations. The entire southeast quarter of section 4 was patented to plaintiff in 1858. The west half of the northeast quarter of section 9 was patented to Alexander Fudge in 1848. The southeast quarter of the southeast quarter of section 9 was conveyed by the administrator of one Mathers, in 1851, to one Price, who conveyed it to plaintiff in 1854. At the March term, 1862, of the De Kalb circuit court, Alexander Fudge obtained a judgment against Estes, the plaintiff, for $990.35. On the 10th day of June, 1862, a general execution was issued by the clerk of said court on said judgment, returnable on the

1st day of September, 1862, and delivered to Joseph Branscom, then sheriff of said county, who, on the 7th day of February, 1863, levied it upon all the land in controversy, except the west half of northeast quarter of section 9, and also upon the east half of northwest quarter of section 9, not in controversy in this suit, and to which it does not appear that any of the parties had a title. On a sale under that execution, Alexander Fudge became the purchaser of the southeast quarter of the southeast quarter of section 9, and Fountain Hargis of the southeast quarter of section 4.

It will then be seen that all of the lands patented to plaintiff and conveyed to him by Price were levied upon

1. EXECUTION RE-TURNABLE AT WRONG DAY, NOT VOID.

and sold under the execution, and the only question with respect to that branch of the case is whether the sheriff's levy of the execution, made after the day named therein for its return, and the subsequent sale, are valid. Branscom's term of office expired before conveyances of the land under the execution sale were made to Fudge and Hargis, and in 1874, under the statute, (section 62, page 613, Wagner's Statutes,) an order was duly made by the circuit court of De Kalb county, requiring the sheriff of said county to execute deeds to Hargis and Fudge for the lands purchased by them respectively at said sale. These deeds, when executed, related back to, and carried the title from, the date of the purchase, as against the defendant in the execution, plaintiff here. A formal entry of the judgment in favor of Fudge against Estes was not made in 1862, but there was enough of record to authorize the *nunc pro tunc* entry of the judgment at the April term, 1874. *Groner v. Smith,* 49 Mo. 323.

There is, therefore, nothing left to be considered on this branch of the case but the validity of the levy of the execution after the day therein named for its return. By an act approved March 7th, 1861, in force when this execution was issued, it was provided that "all executions

issued upon any judgment rendered by any court of record shall be returnable to the second term of said court after the date of said execution." (Session Acts 1860, page 28.) The first regular term of the De Kalb circuit court after the execution was issued began on the first Monday in September, 1862, and it should have been made returnable to the next regular term of said court, March, 1863. This error of the clerk, however, did not invalidate the writ or make it returnable in law before the March term of the De Kalb circuit court, 1863. It was still in force until the March term, 1863, notwithstanding the clause requiring it to be returned on the 1st day of September, 1862. *Milburn v. The State*, 11 Mo. 188. In *Stevens v. Chouteau*, 11 Mo. 383, the court distinguished between executions issuing from courts of limited and inferior jurisdiction and those emanating from courts of record of general jurisdiction. In that case, an execution was issued by a justice of the peace, returnable in sixty days, instead of ninety, as provided by law, and it was held void, the court, NAPTON, J., remarking: "There can be no doubt that a writ issuing from the circuit court, returnable out of term, is only erroneous, and not void."

With respect to the other tract in dispute, the west half of the northeast quarter of section 9, the plaintiff in-

2. EJECTMENT: evidence: practice. troduced in evidence a deed executed by Joseph Branscom, then sheriff of DeKalb county, dated the 9th day of September, 1864, reciting the judgment in favor of *Fudge v. Estes*, that an execution issued thereon on the 10th day of January, 1862, directed to the said sheriff and delivered to him on the 2nd day of February, 1863, and that by virtue thereof he levied upon said tract of land as the property of said Estes, and reciting an advertisement and sale thereof in accordance with the law, and the purchase thereof by said Fudge, and conveying the same to him. By § 56, p. 748, Revised Statutes, 1855, the above recitals in a sheriff's deed, are evidence of the facts thus recited.

The plaintiff contends that because the defendant pleaded specially a title derived from a sale under the prior execution and made no mention of this deed, he cannot avail himself of it, although introduced in evidence by the plaintiff. There are two answers to this position, either of which is conclusive. The plaintiff sues and alleges, and the burden is upon him to prove, title. If he fails to prove title in himself, he cannot recover, and, of course, if he prove title either in the defendant or another, he defeats his own action. The defendant's answer was: First, a general denial of plaintiff's title; Second, a plea of the statute of limitations, and Third, a plea of title by purchase under the first execution; and, under the general denial, he could have introduced as evidence the deed in question to show that plaintiff's title had been conveyed to Fudge, through whom defendant claimed.

It also appears from the evidence that this tract of land was entered in 1858 by Estes, with money borrowed

3. POSSESSION, HOW CHANGED FROM FRIENDLY TO ADVERSE. by him of Fudge, and by an agreement between them, it was to be, and was, patented to Fudge by the government, and he was to convey it to Estes on payment by the latter of the money advanced by Fudge. The plaintiff under this agreement went into possession of the land, made improvements upon it, and continued in possession for sufficient length of time to acquire a title by limitation in case of an adverse possession, but that possession was taken under a bond for title to be made to him on payment of the purchase money to Fudge, which has never been paid. " In all cases where a party is in possession of land in privity with the rightful owner, nothing short of an open and explicit disavowal and disclaimer of a holding under that title, and assertion of title in himself brought home to the owner will satisfy the law." Tyler on Ejectment, p. 876; *Budd v. Collins*, 69 Mo. 129; *Fulkerson v. Brownlee*, 69 Mo. 371. The instructions given by the court for plaintiff, (none were asked by

defendant,) are in harmony with these views, and the judgment is affirmed. All concur.