CHRISTIAN HOUSE, Respondent, v. JOSEPH MONTGOMERY. Appellant.

Kansas City Court of Appeals, November 9, 1885.

1.  WAY—LICENSE FOR USE OF—WHEN NOT REVOCABLE AT PLEASURE OF LICENSOR.—A license to occupy or use the land of another is revocable at the pleasure of the licensor.   But when the licensee expends labor and money by reason of, and in consideration of having been given the license, in such cases, the better rule is that there is an equitable estoppel against the licensor.

2.  ——— EASEMENT—NATURE OF—HOW ACQUIRED.—An easement is an

interest in land, and may be acquired only by grant, but a grant is presumed from long enjoyment. The grant by which an easement is created may be evidenced in several ways, as by production of an existing deed, or by a long enjoyment of the easement, claimed under circumstances which raise an implication of title originally acquired by grant. A *way* is an incorporeal hereditament and consists in the right of passing over another's ground. It may arise either from grant, necessity or prescription. By a *prescription* a grant is implied, and the modern doctrine is an *user* and enjoyment for the statutory period, instead of immemorially.

3. ―――― WHAT USER OF WAY WILL CONSTITUTE PRESCRIPTION CONCLUSIVELY.—To constitute such *user* or enjoyment as raises the presumption of a grant, requires, in addition to requisite length of time, that it should be adverse, continuous, uninterrupted, and by the acquiescence of the owner of the inheritance out of which, or over which the easement is claimed. And if these are established, it will be held as creating as conclusive a presumption as if it had been established by prescription in the ancient sense. Wash. Easements, 114.

4. ―――― ADVERSE CLAIM OF RIGHT OF USER BROUGHT TO KNOWLEDGE OF OWNER.—Notwithstanding the enjoyment and use may have been begun by permission or toleration, yet where the party claiming to be the owner of the *dominant* estate, rejects or *renounces* the authority under which he began the use and enjoyment and claims its use as of his own right, a *knowledge* of which renunciation and claim is *brought home to the owner* of the servient estate, and continues under this adverse claim, exclusively, continuously, and uninterruptedly for ten years, he would gain the easement, as though it was in fact granted him by deed.

5. ―――― CASE ADJUDGED.—Where it appears, as is conceded in this case, that the enjoyment of the way began under a contract; and the defendant believing he had a right under the contract to the use of the way, independent of any future action of plaintiff, continued the use under such belief, with a claim of such right acquiesced in by plaintiff, for the statutory period; this would give him the easement as of right, as though it had been granted him.

APPEAL from Andrew Circuit Court, HON. HENRY S. KELLEY, Judge.

*Reversed and remanded.*

Statement of case by the court.

This was a suit brought before a justice of the peace. Upon a trial and judgment in the justice's court, an

appeal was taken by the respondent to the circuit court, where, upon a trial, judgment was had in favor of the respondent. Appellant, after an unsuccessful attempt to get a new trial in said court, brings the case to this court by appeal.

The statement of cause of action filed before the justice of the peace was as follows :

"Plaintiff states that on the fourteenth day of August, A. D. 1882, the said plaintiff was the owner and in the possession of the following described land in the county of Andrew and state of Missouri, to-wit, the northeast quarter of the southeast quarter of section number five, in township number sixty-one, of range number thirty-five, and that defendant, on said fourteenth day of August, 1882, while plaintiff was so possessed of said land, unlawfully entered upon said land and voluntarily threw down the fences on said land at the southeast corner and at the southwest corner of the same, and left said fences down, the same not leading into defendant's own inclosure, against the form of the statute. That plaintiff sustained damage by reason of said fences having been thrown down by defendant, by injury to the materials of said fences, and labor of replacing the same, in the sum of two dollars, and by plaintiff's cattle escaping from his said inclosure and straying, in the sum of five dollars. Plaintiff asks judgment for the sum of fourteen dollars, being double the amount of damages sustained by said fences having been thrown down, and also for the sum of five dollars, by virtue of section 3922, Revised Statutes of Missouri."

The court gave for plaintiff the following instructions :

"1. If the parties to this cause entered into a verbal agreement, about 1872, that defendant should have a passway over plaintiff's land by building a fence to separate said way from plaintiff's field, this would not give defendant any interest in plaintiff's land, but only a license to pass over the same so long as plaintiff permitted him to do so, and if the jury believe from the evidence that

plaintiff, prior to August 14, 1882, revoked said license and closed up said passway, and notified defendant thereof, and defendant, after receiving said notice, threw down the fences that plaintiff had put up across said passway, the jury must find for plaintiff such damages as the evidence may show he sustained by reason of such fence having been thrown down, and also the sum of five dollars penalty, provided the fence so thrown down and left down belonged to plaintiff, and did not lead into the defendant's own inclosure."

"2. If the parties to this cause made an arrangement about 1872, by which plaintiff agreed to let defendant pass over his land to get from said defendant's house to the Maryville road, and in pursuance of said agreement defendant built a fence about twenty feet from the south line of plaintiff's land, across said land, and made a lane between said fence and the south line of plaintiff's land, and used the same by passing over it at pleasure, this would not be such adverse possession of plaintiff's land by defendant as would give defendant any title or interest in said land by any lapse of time, however long."

C. F. BOOHER and WILLIAM HEREN, for the appellant.

I. A parol license, when acted upon and executed, amounts to a grant and is irrevocable. And when the parol license is coupled with an interest, or is necessary to the possession or enjoyment of a right or title arising from the act or contract of the person who creates the license it is also irrevocable. *Baker v. C., R. I. & P. Ry. Co.*, 57 Mo. 265, and cases therein cited.

II. The authorities lay it down that even a customary right to do anything on the land of another, acquiesced in by the owner, is *adverse* to the rights of the owner. *Knowles v. Dow*, 22 N. H. 387. "To constitute such adverse possession, all that is necessary is that it should be accompanied with a claim of right" (of course with the

knowledge of the owner).   2 Aikens 266 ; 23 Pick. 141 ; 9 Metcalf 395.

III.  It clearly appears by the evidence in this case that more than ten years had elapsed after building the fence by defendant, and opening and taking possession of lane or passway by defendant, and the giving of notice to defendant by the plaintiff ; and ten years' *adverse* possession by defendant, barred the right of action of the plaintiff.  *Renick v. Kern*, 14 Serg. & Rawle (Pa.) 267 ; authorities *supra* in No. II.

IV.  The court erred in refusing the instructions prayed by defendant, numbered first and second, as to the license being irrevocable, and as to adverse posssession, since they fairly presented the law of this case. *Wilson v. Chalfant*, 15 Ohio 248 ; *Picker v. Kelly*, 1 Greenleaf 117 ; *Rindge v. Baker*, 57 N. Y. 209 ; *Putney v. Day*, 6 New Hamp. 430 ; *Baker v. R. R.*, 57 Mo. 265 ; 14 Serg. & Rawle, *supra*.

Sanders & Mercer and D. Rea, for the respondent.

I.  A parol license to pass over land may be revoked at any time.  *Furhn v. Dean*, 26 Mo. 116 ; *Deluge v. Pearce*, 38 Mo. 288 ; Wash. Real Prop. (4 Ed.) 632, and cases cited ; *Wingard v. Tift*, 24 Georgia 179.   And this though it has been constructed at expense of the licensee. *Ex parte* Colum. 1 Cow 168 ; *Kimball v. Yates*, 14 Illinois 464 ; *Dodge v. McClintock*, 47 New Hamp. 383 ; *Owen v. Field*, 12 Allen (Mass.) 457.

II.  Possession of lands under a parol license is not *adverse* to the grantor.  *Luce v. Carley*, 24 Wend. (N. Y.) 457 ; *Baker v. Mellish*, 10 Vesey Jun. 544 ; 6 Wait's Actions, etc., 452, and cases cited.

III.  This case is entirely dissimilar to that of *Baker v. R. R.* (57 Mo. 266).   In that case there was an agreement on the part of Baker to give a deed on the performance by the company of its part of the contract, and the contract was meant to be an absolute conveyance of the right of way.

IV.  Defendant does not show that he would suffer

any loss or injury by the revocation of the license, and, therefore, there can be no estoppel. *Furhn v. Dean*, 26 Mo. 116.

ELLISON, J.—The evidence is undisputed that defendant was licensed to go over plaintiff's land if he would build a quarter of a mile of fence along one side of the way and thereby also enclose plaintiff's field. That with this understanding defendant did build the fence and afterwards with plaintiff's consent and undoubtedly because of his having the use of the way, he plants a hedge fence and cultivates it for some years. Defendant's evidence shows that he used the way for more than ten years continuously.

The case then involves the question of license and the power to revoke on the part of the licensor, as well as, incidentally, the question of estoppel and easement.

A license to occupy or use the land of another is revocable at the pleasure of the licensor. This is a principle well understood and often repeated in the adjudicated cases, as well as by the different authors.

There is more in this case, however, than a mere license; there is action on the part of the licensee, upon the faith of the license and under the eye of the licensor.

He expends labor and money by reason of, and in consideration of having been given the license. In such case the better rule is, though it is not universally so held, that there is an equitable estoppel against the licensor. *Swartz v. Swartz*, 4 Barr. 353; *Cumberland Ry. Co. v. McClanahan*, 59 Pa. St. 23; *Sheffield v. Collier*, 3 Kelly 82; *Cook v. Pridgen*, 45 Ga. 331; *Same v. Miller*, 27 Ind. 534; *Russell v. Hubbard*, 59 Ill. 355; *Moses v. Sanford*, 2 Lea (Tenn.) 655.

In *Russell v. Hubbard, supra,* a party was about to begin the erection of a frame building on a lot adjoining a brick building. He was told by the adjoining owner that if he would put up a brick house he might use the brick wall of the house already up for the purpose of attaching his building. The proposition was accepted.

The court says that though the license to use the wall might be revoked prior to its execution it could not afterwards. "Money had been expended on the faith of the license, and a different and more expensive building erected. While ordinarily, it might be true that a parol license of this character is not transmissible, may be revoked at pleasure, and extinguished by alienation of the land, yet where money or labor has been expended, the law will interpose and protect the license. The revocation under such circumstances would be fraudulent, and compensation in damages would afford no adequate redress. In such case the execution of the parol permission would supply the place of writing, and take the case out of the statute of frauds. It would be the boldest fraud to allow this permission to be revoked."

In the case of *Swartz v. Swartz* (4 Barr. 353), Chief Justice Gibson, in speaking of an argument of similar import to the one made here, says : "One fallacy of the argument, is the assumption of the right to treat the agreement as a parol conveyance of an interest or estate in the land, instead of a *license* to use it in a particular way without disturbing the title of the owner as a trustee. That such a license is binding, without part execution by delivery of possession, is shown by *Renick v. Kern* (14 Serg. & Rawle 267), on which a parol license to divert water from its ancient course for the use of a saw mill, was held to be irrevocable after the expenditure of money or labor on the basis of it. The principle of the case is, that the revocation would be a fraud, and that to prevent it a chancellor will turn the owner of the soil into a trustee *ex maleficio*."

Where acts have been done by one party, upon the faith of a license given by another, the latter will be estopped from revoking it, even if the exercise of the right given by the license is of a nature to amount to the enjoyment of an easement or other incorporeal hereditament. *Sheffield v. Collier*, 3 Kelly (Ga.) 87.

The case of *Renick v. Kern*, (14 Serg. & Rawle 267), is cited with approval in *Baker v. Ry. Co.* (57 Mo. 265).

In that case, several years before the suit, Kern, the plaintiff in the trial court, being about to erect a saw mill on a stream which was designated as the right hand stream, a better seat for a mill was found by his mill-wright, on what was termed the left hand stream. Kern thereupon applied to Renick for permission to turn the water into the left hand stream, which was granted. In consequence of this permission, he built the saw mill on the left hand stream. Without the aid of the right hand stream, the water of the left hand stream would have been wholly insufficient, but the right hand stream alone would have served the purposes of the mill three or four months during the year. By the union of the two streams the mill was rendered a third more valuable than it would have been with the right hand stream alone. No deed was executed, nor was any consideration given, but Kern in consequence of the permission given by Renick, built a good mill, which did a great deal of business, and which he would not have built on the left hand stream if permission had not been given. Renick diverted the water course, in consequence of which, Kern lost the benefit of his mill; whereupon he brought a special action on the case for damages, and the court held that if a parol license be given *without consideration*, to use the water of a stream for a saw mill, in consequence of which the licensee goes to the expense of erecting a mill, the license cannot be revoked at the pleasure of the grantor. The court says: "The defence in this case is put on the ground that a mere license is revocable, under all circumstances and at any time. But a license may become an agreement upon a valuable consideration, as when the enjoyment of it must necessarily be preceded by the expenditure of money, and when the grantee has made improvements or invested capital in consequence of it, he has become a purchaser for a valuable consideration. Such a grant is a direct encouragement to expend money, and it would be against all conscience to annul it, as soon as the benefit expected from the expenditure

is beginning to be perceived." 3 Kent's Commentaries, 452-3, support the same principle. He also says that a parol license to enjoy a beneficial privilege, is not an interest in land, within the statute of frauds.

We think the decisions in this state will be found in substantial harmony with the doctrine as above set forth.

In *Furhn v. Dean* (26 Mo. 116), it is said, "a mere license may exist by parol, and ordinairly is not assignable, and is revocable, unless it has been executed and the party has incurred expense on the faith of it, so that he would be injured by the revocation. * * * It may be, however, that when acts have been performed upon the faith of a license, the party may be equitably estopped from revoking it to the injury of the other party, but the estoppel will be limited by the injury it is invoked to prevent."

So in *Baker v. Ry. Co.* (57 Mo. 265), the court says "but the doctrine that a power may be recalled at the pleasure or discretion of the donor, ceases to apply when the power is coupled with an interest, or is necessary to possession or enjoyment of a right or title, arising from the act or contract of the person who creates the power."

Messrs. Hare and Wallace, in discussing this subject, deduce the following conclusion: ".From the cases which have been cited, we may deduce two things : one, that a license will be a full justification for the acts done under it, even when they consist in the exercise of an authority of privilege on land, and would, if repeated under an indefeasible right, be in effect an estate or easement; the other, that a license cannot be revoked or withdrawn, so long as it is essential to the possession or enjoyment of a vested right or interest, which has been created by the licensor, or placed, with his assent, in a situation where the continuance of the license is essential to the enjoyment. These inferences obviously result from the general rule, that no one can recall a promise or declaration, made with the view to influence the course of another, after he acted upon it, and thus place

himself in a position where he must necessarily suffer it to be withdrawn. An equitable estoppel arises under these circumstances, to prevent the legal title from being used as a means of injustice."

It will thus be seen that our latest adjudication on this subject quotes with approval and adopts the principle of the authorities most advanced in the doctrine of an equitable estoppel on the power of revocation when the licensee has acted upon the faith of the license, with his labor and money.

The second instruction given for plaintiff, I think is evidently founded upon the theory that there could not be an adverse holding under a license. It says no lapse of time, however long, would give defendant any title or *interest* in said land.

An easement is an interest in land (Washburn's Easements and Servitudes, 5, 6, 23; 2 Washburn Real Property, 301), and may be acquired only by grant, it is true, but a grant is presumed from long enjoyment. And so it may be said an easement may be acquired as land itself is, both by deed and by prescription. The grant by which an easement is created may be evidenced in several ways. It may always be done by the production of an existing deed. So it may be by prescription, or a long enjoyment of the easement claimed, under circumstances which raise an implication of title originally acquired by grant. The law regards the enjoyment of an easement for a sufficient length of time as evidence that a deed once existed, and gives to it the same effect as if the deed were produced. The old doctrine of prescription was that the interest should have been enjoyed time whereof the memory of man runneth not to the contrary. But now, the same rights are gained, and the same presumption exists, as to there once having been a deed, from a user and enjoyment for the statutory period of limitation. *Polly v. McCall*, 30 Ala. 20, 29; *Ricard v. Williams*, 7 Wheat. 110. In such cases, "not that the court really thinks a grant has been made," but they presume the fact for the purpose, and from the

principle of quieting the possession. Washburn's Easements and Servitudes, 27-28.

" A way is an incorporeal hereditament, and consists in the right of passing over another's ground. It may arise either from grant, necessity or prescription * * *." By a prescription a grant is implied. Washburn's Easements and Servitudes, 231.

As before stated it was for the obvious and just purpose of quieting title to land that courts from policy have adopted a certain defined period, in case of easements, raising a presumption of a grant.

And in Tudor's Leading Cases, 114, we are told that for the purpose of supporting a right which has been long enjoyed, but which could be shown to have originated in the memory of man, the courts resorted to the fiction of a lost grant. And if the enjoyment was shown to be for twenty years, the judges directed juries to believe that a presumption arose that a grant had been made of the easement and subsequently lost.

The books show it to be a legal fiction of the courts and the statutory period of limitations has been arbitrarily adopted by them, by analogy.

Though decisions are not uniform on many material questions affecting the right of easement, it is well nigh universally conceded, that a user and enjoyment for the statutory period instead of immemorial enjoyment, is the modern doctrine ; and while in many, if not most of the states, this time is twenty years, yet it will be a longer or shorter period, determined by the length of limitation on the right of entry in the particular state. Washburn's Easements and Servitudes, 129, 130 ; *Ricard v. Williams*, 7 Wheat. 110.

In some jurisdictions the presumption is conclusive, while in others it is only evidence for the jury which may be rebutted, but the presumption becomes absolute unless rebutted. Cowp. 108, 109 ; *Wilson v. Wilson*, 4 Dev. 154.

Prof. Washburn says, " that any seeming discrepancy between the ancient doctrine of prescription and

the modern notion of presumed grant, as to the conclusiveness of the evidence thereby resulting in favor of title to incorporeal hereditaments, may be reconciled if we bear in mind that to constitute such a user or enjoyment, as raises the presumption of a grant, requires, in addition to requisite length of time, that it should be adverse, continuous, uninterrupted, and by the acquiescence of the owner of the inheritance out of, or over which, the easement is claimed. And if these are established it would doubtless be held to create as conclusive a presumption, as if it had been established by prescription in the ancient sense." Easements and Servitudes, 114.

"The use and enjoyment of what is claimed must have been adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the estate in, over, or out of which the easement prescribed for, is claimed, and while such owner was able, in law, to assert and enforce his rights, and to resist such adverse claim, if not well founded. And it must, moreover, be of something which one party could have granted to the other." Washburn's Easements and Servitudes, 131.

There is a lack of agreement in the reported cases as to whether an original agreement concerning the use and enjoyment, will not perpetually prevent title by prescription, or rebut the presumption of a grant. It is true an adverse right of easement cannot grow out of a mere permission, "yet the real point of distinction is between a tolerated or permissive user, and one which is adverse or as of right." From which it would seem to follow, that notwithstanding the enjoyment and use may have been begun by permission or toleration, yet where the party claiming to be the owner of the dominant estate, *rejects or renounces the authority* under which he began the use and enjoyment, and claims its use as of his own right, a *knowledge* of which renunciation and claim is *brought home to the owner* of the servient estate, and continues under this adverse claim exclusively, continuously, and

uninterruptedly for ten years, he would gain the ease-ment, as though it was in fact granted to him by deed.

Applying these principles to the case before us, we would say that the period requisite to acquire an ease-ment in this state is ten years, in analogy to our present statute of limitations. It is conceded that the enjoyment of this way began under a contract as shown in the testi-mony. If, therefore, defendant, believing he had a right under the contract to the use of the way, independent of any future action of plaintiff, continued the use under such belief, with a claim of such right, acquiesced in by plaintiff, for the statutory period, he would now be the owner of the dominant estate.

As to what would be an assertion or claim of rights by defendant, or acquiescence by plaintiff, we see no reason why the rules and principles applicable to adverse possession of land, in analogous cases would not apply. See *Estes v. Long*, 71 Mo. 605 ; *Budd v. Collins*, 69 Mo. 129.

Though it should be conceded that defendant had a mere license from plaintiff, yet a license may, under the conditions herein set out, as to adverse occupancy, ripen into an easement.

By so holding the law, we are in line with its analo-gies in other familiar branches. If one enters land under title bond he may reject or renounce such holding and claim adversely without regard to the bond. So, if he hold under a mortgage, he may cease to so claim and begin adverse possession.

This case has not been tried in accordance with the principles set out in this opinion, and for that reason the judgment will be reversed and the cause remanded. All concur.