ELIAS P. SMITH, Respondent, v. THOMAS J. MUSGROVE,
Appellant.

St. Louis Court of Appeals, October 0, 1888.

1. **Water Course :** PRESCRIPTIVE RIGHT. Where a creek ran through
and over the neighboring lands of both the plaintiff and the
defendant, and at a certain period its course was changed on the
defendant's land, from natural causes, so that it no longer ran in
the direction of the plaintiff's land, and the defendant's grantor,
then in possession, refused to permit the road overseer to obstruct
the new channel for road purposes, whereby the stream would have
been returned to its former course ; and where the new condition so
remained, with defendant's consent and acquiescence, for more
than ten years, during which time several persons purchased lands
and made improvements on the presumption of permanency in the
new channel, the plaintiff acquired a prescriptive right in the
existing course of the stream, and was entitled to an injunction
restraining the defendant from erecting or continuing a dam on his
land, whose effect would be to throw the waters back into their
original channel, to the injury of the plaintiff's land.

2. **Estoppel.** While an estoppel might arise against the defendant
in favor of the road overseer, who was induced by the defendant
to desist from filling up the new channel, yet there can be no
application of the doctrine of estoppel to the plaintiff's case, since
it does not appear that he did anything, or changed his condition
in any way, by reason of any act of the defendant.

*Appeal from the Clark Circuit Court.*—HON. BEN. E.
TURNER, Judge.

AFFIRMED.

*W. H. Biggs, E. T. Smith* and *Wood & Mont-
gomery,* for the appellant.

Has the plaintiff or the public acquired the right by
prescription to have the waters of Honey creek flow
north over defendant's land ? Has the appellant, by the
acts of his ancestor, Arphaxad Musgrove, lost the right
to have the waters of Honey creek run south over

VOL. xxxii—16

respondent's land? Is appellant, on account of the acts and declarations of Arphaxad Musgrove, estopped from asserting that the channel of Honey creek is not over his land? In the case of *Corning v. Gould*, 16 Wend. 531, the court thoroughly discusses the doctrine of the abandonment and extinguishment of an easement. The court in that case said, that an abandonment "is a simple non-user of an easement, but to establish such an answer to the claim of a right of way, the enjoyment of the right must have totally ceased for the same length of time that was necessary to create the original presumption. * * * If not there is no abandonment." In *Taylor v. Hampton*, 4 McCord, 96, and which is relied on and cited by the court below, the court in discussing the doctrine of extinguishment said: "It is a general principle of the common and civil law that any right may be destroyed, not only by an act of the party positively destructive of the right itself, but by an act incompatible with the nature or exercise of it." The court further on says: "I do not mean that a person will lose a right by merely ceasing to use or exercise it; but he must do some act by which he secures to himself some other thing inconsistent with the enjoyment of the former." The case of *Woodbury v. Short*, 17 Vt. 387, cited by the court, is very different to the case at bar. In that case the channel of a stream had been completely and suddenly changed by an unusual freshet. The change was not gradual as in this case, but became complete by the action of one freshet; besides, all parties had acquiesced in the change for over ten years. We don't think the decree of the court can be sustained on the theory of an extinguishment of Musgrove's right to the old channel. Under the facts in this case defendant is not estopped or prevented from asserting that the channel of Honey creek is not over his land. Estoppels *in pais* are odious, and in all cases where the equitable doctrine has been applied, there is some ingredient that would make it a fraud in the party to insist on his legal rights. *Com. v. Moltz*, 10 Barr, 531. In the case

of *Delephine v. Hitchcock*, 6 Hill. 16, the supreme court
of New York says "that an estoppel *in pais* is a moral
question. It can only exist where the party is attempt-
ing to do that which casuists would decide to be wrong,
something which is against good conscience and honest
dealing." And in order to complete an estoppel *in pais*,
three things are necessary : Misrepresentation or wilful
silence by one having knowledge of the fact; that the
actor (that is respondent in this case), having no means
of information, was by the conduct of the other induced
to do what otherwise he would not have done ; and that
injury would ensue from a permission to allege the
truth. 10 Barr, *supra*, 531 ; also *Copeland v. Copeland*,
28 Me. 539 ; *Whitaker v. Williams*, 20 Conn. 104.
And it is a well-settled rule that, in order to create an
estoppel *in pais*, the acts and declarations of the party
relied on must have been accompanied with the design
that they should be acted on by the party setting up the
estoppel. *Turner v. Caffin*, 12 Allen [Mass.] 401 ;
*Pluner v. Lord*, 9 Allen [Mass.] 455 ; *Andrews v.
Lyons*, 11 Allen [Mass.] 349 ; *Kinkle v. Mayor*, 23 N.
J. Eq. 84. And when a party, through misapprehen-
sion, ignorance or inadvertence, does acts or makes
declarations that mislead another to his injury, but when,
at the same time, there is no wilful deception or cul-
pable negligence, and no intention that the representa-
tion should be acted on as true by the other party, and
nothing that is equivalent to a promise that the repre-
sentation is true, the person making the representation
or doing the act is not estopped from proving the truth
against the party thus misled. *Pieper v. Gilinore*, 49
Me. 149 ; *Danforth v. Adams*, 29 Conn. 107 ; *Rich-
ardson v. Chickering*, 41 N. H. 380. Strangers, casually
hearing of the declaration of a party sought to be estop-
ped, cannot, by acting thereon, preclude the party from
showing the truth. *Morgan v. Spengler*, 14 Ohio St.
119 ; Bigelow Estop. secs. 437, 485 ; *Kenny v. Wheton*,
44 Conn. 262 ; *Mayerborg v. Haynes*, 50 N. Y. 675. An
estoppel can be invoked only to hold a party to the facts

as he alleged them to be. He cannot be controlled by a mere inference directly contrary to the facts which he stated. *Keating v. Orne*, 77 Pa. St. 89. When the doctrine of estoppel is invoked in respect to the title to land (and that is this case), in order to create an estoppel it must appear (1) that the party making the admission by his declaration or conduct was apprised of the true state of his own title ; (2) that he made the admission with the express intention to deceive or with such careless and culpable negligence as to amount to constructive fraud ; (3) that the other party was not only destitute of all knowledge of the true state of the title, but of all convenient and ready means of acquiring such knowledge by the use of ordinary diligence ; (4) that he relied on such admissions and will be injured by allowing its truth to be disproved. *Morton v. Zellerback*, 38 Cal. 15 ; *Hambleton v. Railroad*, 44 Md. 551 ; *Brewer v. Railroad*, 5 Met. 479 ; *Boggs v. Mining Co.*, 14 Cal 367, 368. The case lacks every element of estoppel. *Weir v. Cowles*, 24 Ala. 446 ; *Frizzle v. Cole*, 29 Ill. 465 ; *Young v. Foute*, 43 Ill. 33 ; *Fridenberg v. Church*, 37 Mich. 476 ; *Bennett v. Dean*, 35 Mich. 306 ; *White v. Chapin*, 12 Allen, 519 ; Wash. Eas. secs. 90, 91. Whenever the user is of such a character and the circumstances attending it are such as to show that it was a mere privilege, enjoyed by leave of the proprietor of the servient tenement, either express or implied, then the user is not adverse. *Perrin v. Garfield*, 37 Vt. 310 ; *Tracy v. Atherton*, 36 Vt. 513 ; *Garrett v. Jackson*, 20 Pa. St. 331 ; *Ingraham v. Hough*, 1 Jones Law Rep. [N. C.] 39 ; *Stiffey v. Carpenter*, 37 Pa. St. 41 ; *Gratrex v. Haywood*, 8 Exch. 291 ; *Rawelson v. Taylor*, 11 Exch. 369. When the owner of an easement fails to use it for the period of limitation the law raises a presumption of an intention to permanently abandon the easement. But this presumption may be rebutted, showing an intention by the owner not to abandon the right. In every case an intention to abandon the easement must be coupled with the non-user and the non-user must have continued for the period

of limitation. *Pratt v. Sweeheer*, 68 Me. 344; *Farrar v. Cooper*, 34 Me. 394; Angell on Watercourses [6 Ed.] 419, notes 2, 3; *Sindiman v. Lindsey*, 69 Pa. St. 100. Appellant contends that the doctrine of "the loss of a property right" by "non-user" is not applicable and should not govern in the determination of this case. The dam built by appellant is wholly on his own land. If the appellant's testimony shows (as counsel for respondent contend) that there are two channels to Honey creek, and that, in any view of the case, the action of appellant in building the dam was wrongful and that he ought to be compelled to remove it, then the action of plaintiff and those for whose use he sues, in obstructing the other or the old channel, is also wrongful, and this court should so modify the decree as to compel all parties before the court to remove any and all obstructions from both channels.

*Anderson & Davis* and *Matlock & Hiller*, for the respondent.

Prior to 1873, while the water of Honey creek still flowed down the old creek, the relation between Musgrove and the owners of the land below was that of dominant and servient estates. Musgrove had an easement to have the waters of Honey creek flow off of his land in its course as it then existed over the lands below; and the owners of the lands below were burdened with the servitude of receiving the water in its usual course and letting it pass over said lands in said course. Wash. on Easem. and Serv. [4 Ed.] 335, 336. Musgrove's easement could be lost by prescription by non-user for ten years and has actually been so lost. Angell on Watercourses [6 Ed.] sec. 240, *et seq.* The period of prescription is now ten years in analogy to the statute of limitations. Angell on Watercourses [6 Ed.] secs. 203, 208; *House v. Montgomery*, 19 Mo. App. 170, 179, 182. A water-course can be established by natural or artificial means · it makes no difference which. Musgrove could

establish a water-course to the north by carrying off the water of Honey creek in that direction until it had made a regular channel with bed and banks. *Earl v. DeHort,* 12 N. J. Eq. 280, 283 ; *Cary v. Daniels,* 5 Metc. [Mass.] 236, 239 ; Angell on Watercourses [6 Ed.] sec. 206. Defendant is bound by the acts and conduct of Arphaxad Musgrove, his predecessor in title, while he was owner of the land. *Dunklee v. Railroad,* 4 Foster [N. H.] 489, 506. If the course of the channel changed and Musgrove acquiesced therein, then he was and the defendant is bound thereby. *Woodbury v. Short,* 17 Vt. 387 ; *Ford v. Whitlock,* 22 Vt. 265 ; Wash. on Easem. [4 Ed.] 443 ; 3 Kent Com. [11 Ed.] 562, *440, note ; Angell on Watercourses [6 Ed.] secs. 57, 58, 60. Musgrove's right to flow over land could also be lost by extinguishment, or by any act or conduct on the faith of which others change their position or expend money. Angell on Watercourses [6 Ed.] secs. 243*a*, 247, 385 ; Wash. on Easem. and Serv. [4 Ed.] 439, 440, 704, 708, 712, 714, 715 ; 2 Wash. on Real Prop. [5 Ed.] 395, *82 ; *Dalton v. Rentoria,* 5 Pac. Rep. 37 ; *Corning v. Gould,* 16 Wend. 528; *Proctor v. Railroad,* 57 Mo. 258 ; *Barker v. Railroad,* 57 Mo. 265 ; *Kelly v. Hart,* 74 Mo. 566 ; *House v. Montgomery,* 19 Mo. App. 170 ; *Princk v. Kern,* 14 Serg. & R. 267. Musgrove, by standing by and remaining silent, and making no claim to the easement to flow water in the ancient channel, while others were purchasing the lands below and improving them, on the faith of their being dry, he knowing of the improvements and encouraging them, was estopped from further claiming such easement after such purchases and improvements were made on the faith of a state of things produced by and acquiesced in by him. The defendant's own evidence shows that with Musgrove's procurement, consent and acquiescence at least a part of the water was turned north and that it had a channel, bed and banks, and took at least a part of the water north, more than twelve years ago, and has ever since continued to do so.

The new channel to the north has therefore been a water-course more than twelve years. *Benson v. Railroad*, 78 Mo. 514. This gave Honey creek two channels, the old one carrying much less water than before. It therefore diminished Musgrove's easement and also the corresponding servitude upon the lands below. Musgrove thereby lost the right to flow all the water in the old course.

ROMBAUER, P. J., delivered the opinion of the court.

The plaintiff, on behalf of himself and other land-owners in the valley of Honey creek, filed his petition praying for a mandatory injunction compelling the defendant to remove a dam which the plaintiff avers the defendant had erected across the channel of Honey creek. The petition states that such dam is a nuisance to plaintiff and other land-owners, and unless removed the waters of Honey creek would flood their lands and render them comparatively worthless.

The defendant, by answer, admitted the erection of the dam, but denied that it was across the channel of Honey creek. The answer states that the channel of Honey creek is as it always was, in a southeasterly direction and across the lands of plaintiff, and that the dam was erected by defendant on his own lands for the purpose of protecting them from overflow. The plaintiff, by reply, denies that the channel of Honey creek runs through his, the plaintiff's, lands. He admits that prior to 1874, the channel of Honey creek was in a southeasterly direction from defendant's lands, and did run through the lands of plaintiff, but avers that, in 1874, said channel changed and took a northerly course from the defendant's lands, and that ever since said date the waters of Honey creek did run in a northerly direction and into Sugar creek, the creek forming a new channel, which it kept for a period of more than ten years, whereby said new channel became an ancient water-course, and that the dam erected by the defendant wholly obstructs this water-course.

Upon a full hearing of the issues thus framed the court granted the mandatory injunction prayed for and the present appeal is prosecuted from this decree.

The evidence offered by both parties is voluminous and conflicting as to some of the *data*. The change in the channel of Honey creek is conceded by all the witnesses. The defendant, however, contends that the evidence shows that such change did not begin prior to 1876 or 1877, and was very slight until 1880, at which time the new channel was increased by the waters of a freshet, and thereby became the main channel of Honey creek. On the other hand, the plaintiff contends that the change began in 1874, and had assumed such shape in 1876, and in that year and ever thereafter the ordinary flow of the waters of Honey creek passed exclusively through this new channel.

The decree of the trial court embodies no finding of facts as to the date when this change took place. As the case is in equity and the finding reviewable upon the evidence on appeal, we have made a finding of fact based upon a careful analysis of the evidence and will proceed to state such finding and then apply the law thereto.

The lands of the plaintiff, as well as of the defendant, affected by the decree, lie in the Mississippi river bottom between the bluffs on its right bank and the river. Both tracts are along the old channel of Honey creek, which is a permanent water-course, having its origin in the hilly country beyond the bluffs and emptying its waters into the Mississippi river, formerly at a distance of about five miles below plaintiff's lands. The defendant's children are the owners of the dominant estate on the creek, their lands being about two miles above those of the plaintiff, following the meanderings of the stream. While the lands are those of defendant's children, we will speak of them, for brevity's sake, as those of defendant, he representing his children in this litigation.

The uniform course of streams coming from the

west and emptying into the Mississippi river in that section of the state is from northwest to southeast, and such was the course of Honey creek prior to 1875. The stream carries considerable water in the wet season of the year, and deposits the brush and driftwood along its course when the waters subside. This process and the alluvial sediment similarly carried and deposited along the channel and on the banks of the creek, have the tendency of scouring the channel in some places, and raising it and the immediate banks in others, so that the channel becomes very irregular as to the general level, and in some places even higher than the adjacent lands beyond its immediate banks.

The next water-course to the north of Honey creek is Sugar creek, the general course of which is through the bottom lands from northwest to southeast, and then from southwest to northeast. This stream empties into the Fox slough of the Mississippi river at a point many miles north of the ancient mouth of Honey creek. As the course of the Mississippi river between these two points is from north to south, the elevation of the mouth of Sugar creek is necessarily much higher than that of Honey creek. We state these facts thus fully for the purpose of making it clear that we are impressed with the fact that the natural course of Honey creek, as determined by the surrounding circumstances existing prior to 1875, was to the southeast and along what is admitted to be its ancient channel.

Opposite to a point in defendant's land, at which, according to plaintiff's claim, the new channel formed, Sugar creek comes within a mile and a half of Honey creek. Nearly midway between the two creeks one Johnson had constructed a ditch twenty-three feet wide and three and one-half feet deep, presumably for the drainage of his own lands into Sugar creek. The ditch connects with Sugar creek and has a slight fall towards that creek. There is, and was at the times hereinafter stated, a slight depression of the land northwardly from

the point where this new channel took off towards John-son's ditch, so as to enable the waters of Honey creek, if tapped at the point where the new channel took off, to flow into Johnson's ditch and thence into Sugar creek.

It is proper to state in this connection that while there is necessarily a depression southeastwardly likewise from the point where the new channel took off, along the course of the old channel of Honey creek, this depression for the first mile or mile and a half, is very slight, and about the same in extent as the depression of the land towards Sugar creek. The main fall of the land towards the Mississippi river along the ancient channel of Honey creek, began only after the stream left a point formerly known as Walnut lake, so that taking the topographical features of the country as they existed, the chances of the creek to flow northwardly, or southeastwardly from the point where the new channel formed, assuming that the stream was left wholly to its own action, were nearly equal.

The map hereto annexed is constructed from the various maps offered in evidence by the parties respectively, and is deemed sufficient to show the geographical features of the country as to water-courses, the location of the plaintiff's and defendant's lands on Honey creek, the course of the new channel and the location of the dam erected by the defendant and sought to be removed by the mandatory injunction.

We find that prior to and in the year 1874 cattle going to water had worn a trail or path, cutting the bank of Honey creek at the point designated by the letter A. on the annexed map ; that parts of the water of said creek in said year passed through such cut northwardly, and began to cut a defined channel towards Sugar creek. This channel extended in length, depth and width during the next succeeding years to such an extent that before the expiration of 1876, the bulk of the water of Honey creek in ordinary stages of the water ran through this channel northwardly into Johnson's ditch and thence into Sugar creek ; in fact a

N

W

E

S

21

22

23

Johnson Ditch

Brittain

Brittain | Brittain | Dewald | Stattery

HIGHWAY

28

27

26

Brittain | Dewald | Slattery

Musgrove  DAM

A

HIGHWAY  Carver

Walnut Lake

Fulton & Smith

Fulton

3 3

34

35

Smith

Formerly

4

3

2

careful analysis of the evidence leaves hardly any doubt on the subject that the waters of Honey creek, ever since the close of 1876, at ordinary stages of water, passed exclusively through this new channel.

We further find that in 1875 Arphaxad Musgrove, the defendant's grantor, was the owner of the land where the new channel left the creek, and was aware of the fact that the creek was cutting a new channel ; that the then road overseer either in that or in the year next succeeding desired to fill this channel by a solid embankment at a point where the road crosses it, being the point where the dam complained of is now erected ; this point was on Musgrove's land and the overseer asked his permission to so fill the new channel; that said Musgrove denied such permission in emphatic terms, saying in the presence and hearing of a number of persons of the vicinage, " God Almighty, let it go to the north or anywhere to get shut of it.    I would not have you to stop it for five hundred dollars in gold ; " that said Musgrove, either at that time or about that time, told the road overseer that the ditch was on his land, and that he would prosecute him if he filled it, and that these statements were made publicly, and under circumstances from which we are justified to infer that they came to the knowledge of plaintiff and other land-owners along Honey creek below the point where the new channel formed.

We further find that prior to the change there were periodical difficulties in keeping the old channel of Honey creek open, and that Arphaxad Musgrove and his neighbors had spent considerable labor and money in dragging out driftwood which had accumulated in the old channel, and in endeavoring to cut a channel from Walnut lake southeast, and that such work afforded no permanent relief.    It is not shown that either Arphaxad Musgrove or any one situated above the point where the new channel cut, had ever since 1874 done any overt act indicating in any manner an intention to keep the old channel open, until August, 1887, when the defendant erected the dam complained of, which closes the

new channel entirely, and thus causes the flowing of the water of Honey creek in a southeasterly direction, flooding the lands of plaintiff and other parties on whose behalf this suit is brought.

We also find that in and after the year 1875, several persons bought lands southeastwardly of defendant's lands on the faith of the supposed change of the channel of Honey creek; that a bridge more than forty feet long crossing the old channel below the defendant's lands had been removed and replaced by a culvert of six feet by two, that levees were erected, houses built, fields put in cultivation, openings in a railroad bank closed, and about two thousand acres which were marshy before reclaimed, some expressly and others presumably on the faith of the supposed change in the channel of the creek.

It appears that obstructions were placed in the old channel below the defendant's land from time to time after 1875. The exact date when these obstructions were thus placed is not fixed by the testimony. Some were erected with a view of protecting the lands from overflow by back-water coming from the Mississippi river, others evidently for the purpose of making temporary passage-ways over the old channel of the creek. It does not appear that any of the obstructions were placed there with a view of arresting the water of Honey creek from flowing southeastwardly, and it is, to say the least, very doubtful under the evidence whether any of them had any material influence in forcing the waters of the ordinary flow of Honey creek into the new channel. That each of them was more or less operative in filling the old channel of Honey creek in times of freshet with sediment, until that channel in some places became almost extinct, necessarily results from what has been stated in preceding parts of this opinion as to the action of the water in these streams.

It appears that when the channel first turned north at the point indicated, friends of Musgrove warned him of the apparent consequences of permitting a flow of

the water in that direction, but he rejected their remonstrances. The fall in the new direction being slight as above stated, the same causes which formerly filled the old channel soon became operative in the new direction. Not being kept open by artificial means it gradually filled until it was insufficient to carry off the water of Honey creek which began to flood defendant's lands at every freshet. It further appears that during the later years of Musgrove's life he complained of this and sought advice how to remedy the matter by legislative aid, but it does not appear that even at those dates he either distinctively asserted his right to the use of the old channel, or abandoned his intention of using the new one.

These being the facts of the case as we find them, we will proceed to apply to them the law as we conceive it to be. The decree of the court does not purport to rest upon the foundation of estoppel *in pais ;* if it did, the decree could not be supported. While the case has some elements of an estoppel, one of its main elements, namely, that the acts and declarations were made with a design that they would be relied on by the party claiming the estoppel, is wanting. The road overseer who built a bridge at the point where the dam now stands, relied upon the statement then made by Arphaxad Musgrove, and such statement was made with a design of influencing his action. As to him and the public he represented there was a complete estoppel, but this did not extend in favor of the plaintiff, not being made in any sense with a view of influencing his action. But while these declarations are not sufficient to work an estoppel, they are very material when taken in connection with the subsequent acts of Arphaxad Musgrove, as bearing on the question of abandonment and acquiescence. On that point the case of *Woodbury v. Short,* 17 Vt. 388, is directly in point. There the defendant had diverted a stream of water from the course in which it had been running across his land, by reason of which the plaintiff's land was overflowed and injured. The court found

that prior to and in 1830 the stream had run in a given channel, but in that year by a sudden freshet had changed its course upon the defendant's land, where it was permitted to run until 1840, when the defendant turned it back into its former channel. The court, in deciding the question in plaintiff's favor, said : " It is not necessary to decide what would have been the rights of the defendant to have turned back the stream into its former channel immediately upon its having changed its course, in 1830, and upon that question no opinion is intended to be expressed, but whether the right should exist after a lapse of ten years, when it may be supposed that new rights and new interests had been acquired, is the question before us." The court then concludes : " The defendant in this case having, as it must be supposed, acquiesced in the running of this stream in its new channel, and the creation of new interests must not be permitted to disturb them."

In that case as in the present the new channel had formed on the defendant's land, and the only difference between the two cases is, that while in the Vermont case the change was sudden and caused by the action of a freshet without the aid of the defendant, in the present it was gradual and aided by acts done with defendant's consent ; that in the Vermont case the creation of new interests rested on inference and supposition only, while in the present case it is shown by positive proof. The case therefore is a stronger one in favor of plaintiff upon the facts than the case of *Woodbury v. Short*.

The counsel for the defendant criticise this case as not resting on any sound principle, and contend that it is unsupported by authority. Upon an examination of the digest of overruled cases we find that the authority of the case has never been questioned. It was expressly approved by C.-J. REDFIELD, in the case of *Ford v. Whitlock*, 27 Vt. 267, while the underlying principle has often been recognized that a person may by acquiescence for a long period, even though it falls short of the period of legal limitation, debar himself of the use

of an easement as against other persons who act upon a state of facts which admit of the reasonable inference of an abandonment. *Stokoe v. Singers,* 8 Ell. & Bl. 31; *Taylor v. Hampton,* 4 McCord, 96; *Dyer v. Sanford,* 9 Met. 395.

It is not necessary, however, in order to uphold the decree in this case, to rest it on the above principle alone, as we must conclude on the facts that the plaintiff's rights to the flow of water in the new channel can be upheld on the theory of prescription. The evidence leaves no reasonable doubt that the ordinary flow of the waters of Honey creek, for more than ten years prior to the erection of the dam by defendant, was through the new channel, thus creating a prescriptive right on part of the plaintiff to have them run there. The period of prescription in this state, in analogy to the statute of limitations, is now ten years. *House v. Montgomery,* 19 Mo. App. 170. The defendant claims that the non-user of an easement for the statutory period is evidence of an intention to abandon only, and may be controlled by proof that the owner had no such intention while omitting to use it. The rule is not uniform on this subject, but conceding that the law is as claimed by the defendant, and yet the evidence offered by him is not satisfactory that either Arphaxad Musgrove or himself, within the statutory period by any overt act, manifested any intention to resume the flow of the water through the old channel.

It must be borne in mind that the new channel is through the defendant's lands and that the case has to be viewed in a two-fold aspect. First, whether the non-user by the defendant of the old channel for the period of ten years worked an extinguishment of that easement, and next whether the user of the new channel by plaintiff for the period of ten years created a right of easement by prescription in plaintiff. The user was certainly continuous and uninterrupted, and with the knowledge of the owner. If it was acquiesced in by him it created the loss of an easement by long acquiescence. If it was

contrary to his will it was adverse and created the acquisition of an easement by prescription, since the fact that the plaintiff and other owners on the stream below made extensive improvements on the faith of the new condition of things, is evidence of a claim of right on their part to have the waters flow in the new course.

We are asked by appellant to at least so modify the decree as to compel all parties before the court to remove any and all obstructions from both channels in case that we conclude under the evidence that there are two channels of Honey creek. It will suffice to say that even if that finding could be made under the evidence, neither the state of the pleadings, nor the state of the evidence, nor the parties before the court would enable us to make a proper decree on that basis.

It results from the foregoing that in our opinion there is no error in the record, and that the decree of the trial court should be affirmed. So ordered. Peers, J., concurs; Thompson, J., absent.