Nelson v. Nelson.

---

JAMES NELSON, Appellant, v. VIRJANE NELSON *et al.*, Respondents.

Kansas City Court of Appeals, May 12, 1890.

1. **License :** REVOCABLE. A mere executory license is always revocable at the pleasure of the licenser.

2. ———: PRIVATE ROAD: PRESCRIPTION: EASEMENT. An adverse right of easement can never grow out of a mere permissive use. It is, however, otherwise, when the licensee has renounced the authority under which he began the use and has claimed it as in his own right, so that the knowledge of such renunciation and claim was brought home to the licenser or owner of the servient estate, and thereafter the licensee continued the use under such adverse claim exclusively, continuously and uninterrupted for ten years. The facts of this case (in relation to a private road) *held* not to bring it within the above rule.

3. **Private Road:** INCONVENIENCE OF WAY OVER OWN LAND. Whether one is entitled to a private road by reason of necessity, when traveling over his own land would be less inconvenient to him than his use of a road over the premises of others would be to them, *quœre.*

4. **Practice :** DEFERRING TO TRIAL JUDGE. When the evidence is conflicting and contradictory, the appellate court feels authorized to defer to the finding of the trial judge.

*Appeal from the Montgomery Circuit Court.*—HON. W. H. BIGGS, Special Judge.

Nelson v. Nelson.

AFFIRMED.

*S. S. Nowlin* and *McDougal & Robinson*, for appellant.

(1) Plaintiff acquired a right to the roadway by prescription. He had had the uninterrupted use thereof for more than ten years—the statutory period. *House v. Montgomery,* 19 Mo. App. 170 ; *Polly v. McCall,* 30 Ala. 20, 29 ; *Ricord v. Williams,* 7 Wheat. 110 ; Wash. Easements, 27, 28; *Ward v. Warner,* 82 N. Y. 265. (2) The plaintiff's user of the exact strip of land in controversy began as early as the spring of 1877, probably 1876, and continued down to March, 1888. During this period such user was known to defendants and their ancestor, Robert Nelson ; it was exercised continuously and uninterruptedly, adversely and under claim of right. Such facts vested in plaintiff an absolute right to the use of the land as a passway in the same manner and upon the same principle that ten years' open, adverse, etc., possession of land vests in the possessor the title thereto. See authorities above cited. (3) This suit being in equity, this court will examine the testimony, and where it appears that the finding of the trial court is not in accordance with the weight of the evidence the judgment will be reversed and the cause remanded, or judgment entered by this court for the proper party.

*Jas. D. Barnett,* for respondents.

(1) The verbal arrangement between Robert Nelson and plaintiff for the lane was a license merely, revocable at pleasure. It was supported by no consideration. *Johnson v. Spillman,* 43 Am. Rep. 192. There was no grant or purchase. The entire evidence proves that James Nelson did nothing whatever to compensate Robert for the road. (2) The use of the roadway

beginning by license was never adverse. It began in the spring of 1877 and was interrupted in March, 1886. The interruption was complete. The fact that plaintiff was afterwards allowed to use a gateway that only partially occupied the same ground does not help him. (3) When the trespass complained of is not a nuisance *per se* an injunction will not lie until plaintiff has established his right at law. *A fortiori* where the right has been rejected at law. *Railroad v. Fitzsimmons*, 7 S. W. Rep. 609. The easement claimed by plaintiff is supported by very doubtful evidence. It would impose a grievous burden upon the lands of defendants. Defendants have a right to have the issue tried by a jury, and a perpetual injunction cannot be granted. *Eckelkamp v. Schrader*, 45 Mo. 309 ; *Arnda v. Klepper*, 24 Mo. 273 ; *Kenerty v. Etewan P. Co.*, Am. Rep. 607. (4) No necessity for the roadway existed at any time, for plaintiff always had access to the public road across his thirty-one-acre tract of timber. But, even had the necessity existed, it is a conceded fact that plaintiff purchased the lands of William Nelson, Sr., in 1883 or 1884, acquiring an ample outlet. When the necessity ceased the right of way founded upon necessity ceased also. Wash. Real. Prop. [4 Ed.] p. 306 ; 82 Mo. 114 ; *Maupin Case*, 6 Mo. 632. It is immaterial that the new way is less convenient than the old. 82 Mo. 114 ; 62 N. Y. 531.

SMITH, P. J.—This is an action to restrain the closing of a roadway claimed by plaintiff, across the land of defendants, by necessity and by prescription. The defendants by their answer denied that plaintiff had any right to the roadway, and claimed that its use by the plaintiff was merely by parol license revocable at will ; that, if there was any necessity for a road, it closed in 1883, when plaintiff purchased land adjoining him on the south, acquiring in that free access to a public road

over his own premises. It appears from the evidence that one Thomas Nelson owned a large body of land which he conveyed by deed to his four sons, of whom plaintiff was one, who in 1865 by deeds divided the land among themselves ; that, at the time of the division, there were no public roads touching the land, and that it was all open and unimproved prairie. In 1868 or 1870, a public road was located on the west of the lands of Robert Nelson, defendants' ancestor, and the same road crossed the timbered lands of the plaintiff ; that, prior to 1875, the plaintiff traveled across the prairie north of his land and that of Robert Nelson, without obstruction ; that a tract of one hundred and sixty acres known as the McGinnis land adjoined the land of Robert Nelson on its northern boundary along which there was a fence. In 1875 the McGinnis tract was fenced. Robert Nelson permitted this fence to be joined to his ; a gateway was afterwards made therein for plaintiff's use ; that in the spring of 1875 the fence was built on the south side of the McGinnis land and thus it was separately inclosed ; that at this time the north fence of Robert Nelson was set back, south, about sixteen to twenty feet so that a roadway was left between the two fences from east to west ; that Robert Nelson purchased the McGinnis land in 1881, and died in 1883. In 1884 plaintiff purchased the land of his brother William Nelson, which was situated south of that on which he resided and which extended west to the public road. The land between the McGinnis tract and the other tract of Robert Nelson, as has been described, remained undisturbed until 1886, when the defendants tore down the two fences and erected one fence in their stead, placing a gateway at one end and a rail fence across the other. There was also testimony, the tendence of which was to show that at the time of division of the land by the Nelson brothers there was a parol understanding, that neither of the brothers should be fenced in but should have free and convenient passway out.

William Nelson, who was a brother of the plaintiff, and Robert Nelson, deceased, testified that he had formerly lived south of. the plaintiff and until he had sold his land to him ; that Robert Nelson opened the roadway for the temporary benefit of the plaintiff with the understanding that it was to continue only so long as he might be willing for it to remain so, and that he reserved the right to close it at any time ; that when the McGinnis land was fenced the plaintiff had no outlet ; that it was closed up about a year when gates were hung there ; that plaintiff wanted Robert Nelson to let him have a deeded road but he refused because he did not want to incumber his land with a road ; the road was to be " optionary with Robert Nelson." There was other evidence tending to show that ,the use of the road was permitted as a mere accommodation to plaintiff. Also there was evidence tending to show that the roadway in question was the one he traveled to Montgomery City where he traded, and over which his children went to school. It further appears that the plaintiff could reach the public road by traveling south of defendant's land and west over his own land, though this route would not be quite so direct or convenient as the said road through defendant's land. The evidence in many essential particulars was contradictory and unsatisfactory. The court found the issues for defendants and decreed accordingly, to reverse which plaintiff has appealed.

I. The single and sole ground upon which plaintiff, by his appeal, questions the decree of the court below is that he acquired a right to the roadway by prescription, he having had the uninterrupted use thereof for more than the statutory period of ten years. Neither on the oral argument, nor in the brief of his counsel, was any other question discussed. Careful analysis and consideration of the evidence has failed to convince our minds that this ground of plaintiff's contention is

well taken. It seems quite manifest to us, from the almost undisputed facts, as they are developed by the evidence of the record before us, that the use by plaintiff of the roadway in question was under a mere executory parol license, which was, therefore, revocable at the pleasure of the licenser. *Fisher v. Dean*, 26 Mo. 116; *Deslodge v. Pearce*, 38 Mo. 589; *Baker v. Railroad*, 57 Mo. 565; *Allen v. Mansfield*, 82 Mo. 688. The agreement by which the license was conferred was unsupported by any consideration whatever, So, as far as we can discover, the license was a mere gratuity. The grant of the license was prompted by the kind feelings which Robert Nelson entertained for his brother, the plaintiff. No doubt, the mind of Robert Nelson was influenced somewhat by the conversation which took place between the four Nelson brothers when they divided the land, which their father had conveyed to them as tenants in common, and which was to the effect that neither of the brothers should be fenced in, and the wish to afford plaintiff a convenient way to the public road as long as was necessary. The testimony of one of the brothers, William Nelson, who seems to have been an intelligent and disinterested witness in the controversy between his kindred in respect to the road, is quite convincing. It shows that the grant of permission by Robert Nelson to the plaintiff was subject to countermand at his pleasure. The witness states that plaintiff was to have an outlet as long as Robert Nelson saw fit to give it to him. "It was optionary with Robert Nelson when he should close the road." The entire use of the road was permissive only. There is no fact remotely indicating an intention on the part of plaintiff to assert an adverse right to the roadway.

The relation of the parties and the circumstances detailed in the evidence all go to discountenance the notion that the plaintiff at any time during the life of Robert Nelson in any way asserted a right to the

roadway adversely to the latter. An adverse right of ease-
ment can never grow out of a mere permissive use. It is
otherwise, however, when the licensee has renounced the
authority under which he began the use, and has claimed
it as of his own right, so that the knowledge of such renun-
ciation and claim was brought home to the licenser, or
owner, of the servient estate, and that thereafter the
licensee continued the use under such adverse claim
exclusively, continuously and uninterruptedly for ten
years. The facts of this case do not bring it within the
principle of the above-quoted rule. The evidence, on
the contrary, we think, very clearly negatives any such
assumption. The essential facts which would have con-
verted the mere permissive use of said roadway into an
easement are wanting. Such a permissive use of the land
of the defendants by the plaintiff for roadway purposes,
with nothing more, could never ripen into an easement
or interest in the land. *House v. Montgomery*, 19 Mo.
App. 170. The user in this case was under a parol
license for that purpose, and the knowledge of such use
by defendants would not have the effect to change the
character of the relation of licensee and licenser, as
that relation began, unless the plaintiff disclaimed and
renounced the license under which he held, so as to
have brought a knowledge of that fact home to the
defendants. The cases cited by the plaintiff are wholly
inapplicable to a case of this sort. According to the
testimony of William Nelson, Sr., the roadway claimed
by plaintiff was, in either 1876 or 1877, closed up for
about a year. This constituted a break or interruption
in the continuous use of the roadway by plaintiff, and,
even if such use had been adverse, this, of itself, was
sufficient to prevent the acquisition of the prescriptive
rights for which he contends. "In all cases where a
party is in possession of land in privity with the right-
ful owner, nothing short of an open and explicit dis-
avowal and disclaimer of a holding under that title, and
an assertion of title in himself, brought home to the

owner, will satisfy the law." *Estes v. Long,* 71 Mo. 605; *Bud v. Collins,* 69 Mo. 129; 3 Kent's Com. 444. The principles of this rule are applicable by analogy to a case like the one at bar. *House v. Montgomery, supra.* The conclusion, therefore, is that, while the plaintiff had a license to use said roadway, that there was not such uninterrupted adverse use and enjoyment of it as ripened into an easement.

II. The purchase by plaintiff of the land of his brother William, which was situate south and west of the land upon which he lived, gave him a way over his own lands west to the public road, and, though not in every respect so direct or convenient as that claimed over the lands of his kinsman, yet to be necessitated to travel over it would doubtless subject him to less inconvenience than it would the defendants for him to use the disputed road through their premises.

But whether the conclusions which we have deduced from the evidence are correct or not, it is evident that it is so conflicting and contradictory that we feel authorized to defer to the finding of the judge who presided at the trial.

The decree will be affirmed. All concur.