PRESTON ROBERTS, Plaintiff in Error, v. J. W. HERRY-
FORD, Defendant in Error.

### Kansas City Court of Appeals, May 15, 1893.

1. **Partnership:** ACCOUNTING: UNNECESSARY SERVICES. In determin-
ing the questions of partnership profits gratuitous payments for non-
beneficial, unnecessary or unjustifiable services are not to be allowed,
but in this case, the disputed services are *held*, on the evidence,
alike beneficial and necessary.

2. **Practice, Appellate:** DEFERRING TO TRIAL COURT IN EQUITY
CASES. Where there is so much conflict and disagreement in the
evidence as in this case the appellate court is authorized to defer to
the finding of the trial court.

*Appeal from the Howard Circuit Court.*—HON. JOHN A.
HOCKADAY, Judge.

AFFIRMED.

*Draffen & Williams*, for plaintiff in error.

(1) It was error to permit $3,600 to be deducted
from the receipts of the Mexican eating-houses for
wages to plaintiff's son. *First.* The evidence shows
that this was an unnecessary and useless expense.
Defendant protested against the employment of plain-
tiff's son, as it entailed unnecessary cost. "An
expenditure which is both unauthorized and unneces-
sary cannot be charged to the firm." Bates on Part-
nership, sec. 767; *Marsh v. Mastersen*, 2 Cent. Rep.
435; 2 Lindley on Partnership, sec. 789. *Second.* The
claim, that the plaintiff had made an arrangement with
his son before he entered into the contract with defend-
ant, and that the son's contract was one of those
referred to in the articles of co-partnership to which

defendant was to be subject, is untenable. It is an afterthought. *Dobbins v. Edmonds*, 18 Mo. App. 307; *Goldman v. Wolf*, 6 Mo. App. 490; *Matthews v. Danahy*, 26 Mo. App. 660. (2) This is a proceeding in equity, and this court will examine the evidence in the case (*McElroy v. Maxwell*, 101 Mo. 294), and will enter such decree here as the court below should have given. *Baldwin v. Dawson*, 39 Mo. App. 527.

*Flournoy & Flournoy*, for defendant in error.

The appellate court will not reverse the finding of the trial court in equity cases, unless it appears that the preponderance of the evidence is against such finding. *Rawlins v. Rawlins*, 102 Mo. 563. The appellate court will defer to the finding of the trial court in equity cases. *King v. King*, 42 Mo. App. 454; *Mathias v. O'Neill*, 94 Mo. 520; *Erskine v. Lowenstein*, 82 Mo. 301.

SMITH, P. J.—This is a suit in equity to settle a partnership account. The questions which are presented for our decision arise upon exceptions to the report of the referee to whom the case had been referred. The trial court confirmed that part of the report of the referee which allowed a charge of $3,600 made by the plaintiff for the services of his son in managing his railway eating-houses for the two years covered by the partnership between plaintiff and defendant. The defendant's contention is that this item should have been disallowed plaintiff as a credit, and charged up on the debit side of the account, which would result in showing a profit on the eating-house business of that amount, the one half of which amount the defendant would be entitled under the terms of the partnership agreement.

The evidence tends to prove that plaintiff in June 1885, was the owner of a stock of groceries in El Paso, Texas, and had been carrying on business there in the name of "P. Roberts & Co." His two sons, Ed Roberts and Ben Roberts, were conducting the business. He also had a contract with the Mexican Central Railroad Company, by which he had leased for a term of years the eating-houses along the line of its road. The privilege of furnishing meals at these eating stations was sub-let by the plaintiff to other parties. He did not supply the meals himself, but rented the houses to others. It was necessary, under his contract, for him to see that proper service was rendered and to collect the rents. The plaintiff and defendant then entered into a contract, dated June 10, 1885, by which it was agreed that the business should be conducted for two years from July 1, 1885, under the firm name of Roberts & Herryford; that the defendant should have charge and control of it, and should devote his entire time and attention to said business, and, at the expiration of the two years, the capital of the plaintiff should be returned to him, and the profits, if any, should be equally divided between the plaintiff and defendant, and the losses should be borne equally by them. The contract contained this clause as to the Mexican eating-houses: "It is understood that said Herryford is to share with P. Roberts in the profits and losses during his partnership in the eating-houses on the Mexican Central railway, and shall be subject to all contracts and agreements made by and between said Roberts and the Mexican Central Railway Company, or said Roberts and other parties."

From these provisions of the partnership agreement it does not appear either expressly or by necessary implication that the defendant was to have charge of the plaintiff's eating-houses on the Mexican Central

railway. It seems that defendant was to have full charge and management of the partnership business only at El Paso. There were, no doubt, good reasons why the plaintiff would not care to place his eating-house business under the control of the defendant. He did not bind himself to do more than share the profit and loss therein with defendant. The testimony of the plaintiff and his son Ed was to the effect that the latter had been employed by the former to take charge of the eating-house business before the partnership agreement was entered into.

It further appears from the evidence that at the date of the partnership agreement and for some time thereafter one Bunell was acting as manager for plaintiff of his eating-houses; that on July 5th, after the partnership agreement was entered into, the plaintiff wrote to the defendant a letter, in which he mentions some complication in respect to one of his eating-house contracts and refers to Bunell's knowledge of the matter. In this letter he tells the defendant to "please explain this matter to Ed, as I presume he will take charge of that business," refering evidently to the railway eating-house business. If the plaintiff had employed his son to take charge of his eating-house business prior to the entering into the' partnership with the defendant, it is easy enough to see why he wrote to the defenndant that he "presumed that Ed would take charge of the eating-house business." And this is perfectly consistent with the provisions of the partnership agreement. If plaintiff did not under the partnership agreement give defendant control of the railway eating-house business, then it would appear that the partnership agreement, the letter and the testimony of the plaintiff and his son are entirely consistent and harmonious. And even if the partnership agreement as first written was modified

before it was signed, which may well be doubted, so as to omit the clause that provided that plaintiff's son Ed should have charge of the eating-house business, this does not conclusively prove that the plaintiff had not before the date of the formation of the partnership employed his said son to take charge of· that business. Nor did the plaintiff by the terms of the co-partnership agreement as modified surrender to defendant the control of the eating-house business. If the plaintiff had made an agreement with his son to take charge of his eating-house business before the date of the co-partnership agreement, then by the very terms of the instrument the plaintiff was authorized to pay his son the amount of wages stipulated in the agreement of employment, or if no amount was so stipulated, then whatever the services were reasonably worth.

The contract of co-partnership was entered into in this state where both parties then resided. The plaintiff's sons were then in charge of his grocery business at El Paso, and under the co-partnership agreement the defendant was to displace them. The co-partnership agreement was dated June 10th, though not signed till later on. On June 12th the plaintiff in answer to a letter of defendant dated June 11th states that: "I don't see it as you do in regard to Ed and Ben. Of course I do not mean that we are compelled to employ them whether they work or not. I don't want them employed unless agreeable to both you and them. I merely named it in the agreement so the boys would see that I had not forgotten them with you."

We think the inference deducible from this· correspondence is that the plaintiff, who it appears wrote the partnership agreement, desired to make provision therein for the employment of his two sons by the partnership, and it was to this the defendant objected.

Vol. 54—24

This provision does not seem to have made any reference to the plaintiff's eating-house business. On the other hand it would seem quite strange that if the plaintiff had previously employed his son Ed to take charge of his eating-house business, then why did he desire to provide employment for him by the partnership during the same time? Why he did this surpasses all understanding, unless it be untrue that he had such previous agreement with his son to take charge of the eating-houses.

What is stated by the plaintiff in his letter just referred to is fatal to the plaintiff's claim that he had employed his son to take charge of his eating-house business before the entering into the partnership agreement. But if the plaintiff retained under the contract of partnership, as we think was the case, the control of his eating-house business, then he had the undoubted right at any time to employ his son or any other person to manage the same for him. There is nothing in the partnership agreement requiring plaintiff to give his personal attention to his eating-house business, nor that he should furnish his son or any one else to take charge of the same and manage it without cost to the partnership. It is an elementary principle of the law of partnership that when the question of profit is required to be determined that gratuitous payments to third persons which do not appear to have been beneficial to the business nor necessary or justifiable upon business principles will not be allowed as credits. 2 Lindly on Partnership, sec. 789; Bates on Partnership, sec. 767. It is quite conclusively shown by the evidence that the plaintiff's eating-house business from its very nature and extent required frequent attention.

But as to the value of the service of one so attending it the testimony sharply conflicts. There is no evidence that the services of plaintiff's son were without

value. The defendant testified that the service could have been performed by the partnership bookkeeper, and for that reason the services of plaintiff's son were unnecessary. There was other testimony showing that it was impossible for the bookkeeper to have performed the double duty of attending to the partnership books and the plaintiff's eating-house business. The services of the plaintiff's son were alike beneficial and necessary, and the charge made therefor does not appear obnoxious to the rule of law just stated.

As to the value of the services of the plaintiff's son there is so much conflict and disagreement in the evidence that we feel authorized to defer to the finding of the trial court. *Nelson v. Nelson*, 41 Mo. App. 130; *King v. King*, 42 Mo. App. 454. And this last remark applies as well to every other issue of fact in the case which we have been called upon to decide.

We do not therefore feel warranted in interfering with the decree of the trial court, which will be affirmed. All concur.